IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JUAN COLOMBANI**<br><br>Plaintiff<br><br>vs.<br><br>**RINCON DE LA VILLA, INC.**<br><br>Defendant | **CIVIL ACTION** |

## COMPLAINT

**TO THE HONORABLE COURT:**

The plaintiff, Juan Colombani (hereinafter "plaintiff" or "Mr. Colombani"), on behalf of his own interests, and respectfully requests a **permanent injunction**[1] against **Rincon de la Villa, Inc.** in accordance with the Title III of the Americans with Disabilities Act, and its applicable regulation.

### I.   PARTIES

1. Plaintiff's name is **Juan Colombani**. His mailing address is: HC 03 BOX 6245 Rincón PR 00678. His physical address is Carr. 412 Km 7.1 Bo. Jagüey, Rincón, PR 00677. His telephone number is: (939) 372-4106. His phone number is: (939) 372-4106.

2. The defendant's name is **Rincon de la villa, Inc.** The defendant is the owner, lessor, lessee and/or operator of the public accommodations place identified in paragraphs 6 and 7.

### II.   ALLEGATIONS

---

[1] A preliminary injunction is not requested at this time.

1

A. **Regarding the Plaintiff's Medical Conditions**

3. Mr. Juan Colombani has the following medical conditions: he suffers from a 100% disability at the cervical vertebrae levels C4, C5, and C6, which severely impacts his neck and upper body mobility, along with a coccyx fracture that results in chronic pain and discomfort, and neurological damage that limits his physical coordination and mobility. As a result, he is unable to sit for extended periods, can only stand for 5-10 minutes, and is restricted from long walks, running, or engaging in sports. In addition to these physical injuries, Mr. Colombani has a history of pulmonary embolism, requiring constant monitoring due to the risk of recurrence, and has undergone 27 CT scans with contrast, elevating his cancer risk and necessitating regular colon cancer screenings. He is also diagnosed with PTSD, primarily due to traumatic experiences related to medical procedures, which necessitates sedation for MRI and CT scans to manage severe anxiety and distress. As a result of these medical conditions, Mr. Colombani has substantial limitations within the meaning of the ADA compared to most people in the general population.

4. As a result of the described medical conditions, Mr. Juan Colombani has substantial limitations within the meaning of the ADA in his daily activities, compared to most people in the general population.

5. The major life activities substantially impacted by the plaintiff's impairments are as follows: Mr. Colombani's physical conditions, including the cervical disability at vertebrae C4, C5, and C6, coccyx fracture, and neurological damage, severely restrict his mobility and overall physical capacity. These injuries prevent him from sitting for extended periods, limit his ability to stand to only 5-10 minutes, and make it impossible

for him to walk long distances, run, or engage in any physical activities, including sports or exercise. As a result, Mr. Colombani faces significant difficulties in performing daily activities that require mobility or physical effort, and his ability to move about and carry out basic daily functions is considerably impaired compared to most people.

**B. Concerning the Properties in Question and the Court's Jurisdiction**

6. The property in controversy is a public accommodation known as **Villa Cofresi Hotel & Restaurant**, located at Rd 115 Km 12.0, Rincón, Puerto Rico 00677, with coordinates 18.329596370477113, -67.25007377602448.

7. The defendant is the owner, landlord, tenant, and/or operator of the property mentioned above.

**C. Discrimination Against the Plaintiff Due to Disability**

8. The Plaintiff visited Villa Cofresi Hotel & Restaurant on July 25, 2024, at approximately 1:30 p.m. As a loyal visitor to the hotel for many years and given its proximity, he intended to have lunch at the hotel's restaurant. Upon arrival, the security guard, after confirming that the Plaintiff was not a hotel guest, placed a wristband on him and informed him that he would need to park outside the premises. Despite the Plaintiff informing the guard of his permanent disability and presenting the appropriate credentials, the guard denied him access to the designated accessible parking spaces, even though there were two vacant spaces at that moment. This refusal hindered the Plaintiff's equitable access to the facilities. Additionally, based on prior visits, the Plaintiff had identified several other architectural barriers at the location.

9. As a result of his visit on July 25, 2024, Mr. Colombani was able to identify the following barriers in the policies and procedures of the location at the Villa Cofresí Hotel & Restaurant, located at Rd 115 Km 12.0, Rincón:

**Inclusive Policies of the Property**

a. **Reasonable Modification Policies:** This property fails to comply with requirements for reasonable modification policies. No policies are in place to ensure equal access to services for individuals with disabilities. An incident in which a security guard denied access to accessible parking spaces, despite the Plaintiff presenting valid disability credentials, demonstrates the lack of necessary policies to ensure reasonable modifications and equal access.

b. **Maintenance of Accessible Spaces:** This property fails to comply with standards for maintenance policies of accessible spaces. There are no sufficient policies to ensure that accessible spaces, such as parking areas, remain available at all times. The refusal to allow the use of these spaces indicates a failure in monitoring and maintaining accessible areas, hindering safe and equal access for individuals with disabilities.

10. Similarly, Mr. Colombani is aware of the following architectural barriers at the Villa Cofresí Hotel & Restaurant, located at Rd 115 Km 12.0, Rincón:

**Exterior of the Property**

c. **Accessible Parking Spaces:** This property fails to comply with accessible parking space requirements. The number of accessible spaces provided does not meet the minimum required, and there are no designated van-accessible spaces, which limits access for individuals with mobility devices.

d. **Access Aisles and Surface Condition:** This property fails to comply with standards for access aisles and surface conditions. Access aisles are either missing or inadequately

4

sized, and the surface is irregular with cracks and uneven terrain, creating obstacles for individuals with mobility devices.

e. **Accessible Entrances:** This property fails to meet accessibility standards for entrances. The main entrance has excessive door pressure, threshold heights that exceed allowable limits, and insufficient maneuvering clearance, making access challenging.

f. **Accessible Signage:** This property fails to provide adequate accessible signage. Secondary entrances lack appropriate signage and accessible routes, complicating the identification of entry points for individuals with disabilities.

**Interior of the Property**

g. **Pool Accessibility:** This property fails to meet pool accessibility standards. There is no pool lift or other accessible entry option. Standards require at least two accessible entry methods, with one being a lift or sloped entry, which is missing, thereby preventing safe pool access for individuals with limited mobility.

h. **Hallways and Corridors:** This property fails to comply with requirements for hallway and corridor width. Hallways and corridors do not provide the minimum clearance of 36 inches, preventing individuals with mobility devices from achieving a full turning radius. This lack of accessible space restricts the independent movement of individuals, limiting their access to key areas and services.

i. **Service Counter Heights:** This property fails to comply with accessibility standards for service counter heights. The counters are positioned above the maximum ADA-compliant height of 36 inches, making it difficult for individuals with mobility devices to access services independently. The high counters hinder equal access to the services provided for individuals with mobility needs.

j.  **Dining Area Accessibility:** This property fails to comply with standards for accessible dining areas. Tables do not meet the required accessible height, and pathways to seating areas are obstructed or inadequate, limiting access for individuals with disabilities. These non-compliant elements restrict the ability of individuals with disabilities to enjoy dining services on an equal basis with other patrons.

k.  **Accessible Guest Rooms:** This property fails to meet accessibility standards for guest rooms. An insufficient number of accessible rooms is provided, and furniture placement does not allow adequate clearance for individuals with mobility devices.

**Property Restrooms**

l.  **Toilet Clearance:** This property fails to comply with required toilet clearance standards. The space around the toilet does not meet minimum clearance requirements for individuals with mobility devices, with inadequate maneuvering space due to nearby fixtures and walls. This restriction hinders the independent use of restroom facilities for individuals with mobility needs.

m.  **Grab Bars:** This property does not meet the standards for grab bar installation. In the men's restroom of the property, grab bars are either missing or installed at incorrect heights, failing to comply with ADA specifications, which require placement between 33 and 36 inches above the floor. The absence or improper placement of grab bars makes it difficult for individuals with mobility impairments to safely use the restroom facilities.

11. The barriers in the **inclusive policies of the property** directly impact Mr. Colombani's physical conditions and limitations. The property lacks reasonable modification policies that would ensure equal access to services for individuals with disabilities. This absence of policy is evident in an incident where a security guard denied Mr. Colombani access to accessible parking spaces, despite his presentation of valid disability credentials,

underscoring the lack of procedures to provide reasonable accommodations and ensure equal access. Additionally, the property fails to comply with standards for maintaining accessible spaces. No effective policies are in place to guarantee that accessible areas, such as designated parking spaces, remain available for those who need them at all times. The refusal to allow Mr. Colombani to use these spaces reflects a breakdown in monitoring and maintaining accessible areas, which directly hinders his safe and equitable access, essential to his physical needs and limitations.

12. Mr. Colombani is aware of each of the barriers on the **exterior of the property**, including the inadequate number of accessible parking spaces and the absence of van-designated spaces, which limits his immediate access. He is also aware of the lack of adequate access aisles and the presence of irregular, cracked surfaces that pose safety risks. Additionally, he is aware that the main entrances do not meet accessibility standards, as they have excessive door pressure, high thresholds, and insufficient maneuvering space. Furthermore, he is aware of the lack of accessible signage at secondary entrances and routes, which complicates the identification of access points. Due to his awareness of these barriers, Mr. Colombani feels discouraged from returning to the property, as he knows his access will be limited and he will not be able to fully enjoy the goods and services offered there.

13. Mr. Colombani is aware of the existence of barriers in the **interior of the property**, including the lack of a pool lift and accessible entry options, which prevent safe access for individuals with limited mobility. He is also aware of the barriers in the hallways, as he knows they do not provide the minimum clearance of 36 inches, restricting independent movement. Additionally, he is aware of the barriers at the service counters,

which are positioned above the maximum ADA-compliant height of 36 inches, making it difficult to access services. He is also aware of the barriers in the dining area, where tables do not meet the required accessible height, and pathways to seating areas are obstructed. Furthermore, he is aware of the barriers regarding the number of accessible guest rooms, which is insufficient, and the poor arrangement of furniture that does not allow adequate maneuvering space. Due to his awareness of these barriers, Mr. Colombani feels discouraged from returning to the property, as he knows his access will be limited and he will not be able to fully enjoy the goods and services offered there.

14. Mr. Colombani is aware of the existence of barriers in the **property's restrooms**, including inadequate clearance around the toilet due to the proximity of fixtures and walls, which restricts maneuverability and makes independent use of the restroom facilities difficult for individuals with limited mobility. He is also aware of the absence of grab bars or their incorrect installation in the men's restroom, which deprives users of adequate support for stable movement. Due to his awareness of these barriers, Mr. Colombani feels discouraged from returning to the property, as he knows his access to the restroom facilities will be limited, and he will not be able to enjoy the same level of dignity and safety as other patrons.

15. Mr. Colombani is aware of the architectural barriers in the exterior, interior, and restrooms of the property, and he also personally experienced the barriers in the policies and procedures. He encountered the lack of reasonable modification policies that ensure equal access to services and faced an incident where a security guard denied him access to the accessible parking spaces despite presenting valid disability credentials. As a result, he feels discouraged from returning to the location, knowing he will not receive

dignified treatment until these barriers are addressed. The lack of accessibility and inadequate policies he experienced affect his ability to fully enjoy the facilities and services, leading to frustration and sadness when considering a return.

16. The plaintiff will be affected in the future by the barriers that exist on the property because:

a. The plaintiff plans to return to the property within the next two months to dine at the restaurant and enjoy the amenities, as he has done previously, having been a regular customer for many years due to his strong preference for this establishment and the convenience it provides.

b. Additionally, the plaintiff frequently moves around the area where the property is located for the following reasons: The plaintiff resides in the Rincón area, making Villa Cofresí a convenient and familiar place for dining, socializing, and spending leisure time near his home.

17. The plaintiff, Mr. Colombani, interacted with each of the barriers mentioned above regarding the policies and procedures of the location and was negatively impacted during his visit due to his disability. For example, upon arriving at the Villa Cofresí Hotel & Restaurant, a security guard denied him access to the accessible parking spaces despite him presenting valid disability credentials. This refusal not only hindered his access but also caused him frustration and discouragement. Additionally, Mr. Colombani faced other obstacles during his visit, such as the lack of reasonable accommodation policies that ensure equitable access to services. These negative experiences highlighted the existing barriers and affected his ability to fully enjoy the facilities, increasing his sense of insecurity and discomfort.

18. To resolve the barriers in the **inclusive policies of the property**, the following improvements can be made: establish reasonable accommodation policies that ensure equal access to services for individuals with disabilities. This includes creating clear procedures that enable employees to provide appropriate assistance in situations like the one experienced by Mr. Colombani, where a security guard denied him access to the accessible parking spaces despite him presenting valid credentials. Additionally, it is essential to implement policies that ensure accessible spaces, such as parking areas, remain available at all times. This could be achieved through an effective monitoring system that guarantees proper usage of these spaces, preventing unauthorized individuals from occupying them. Implementing these measures would not only enhance accessibility but also promote a more inclusive and respectful environment for all visitors.

19. To resolve the barriers in the **exterior of the property**, the following improvements can be made: increase the number of accessible parking spaces to meet the minimum required standards and designate specific van-accessible spaces to enhance access for individuals using mobility devices. Additionally, it is essential to ensure that access aisles are properly sized and maintained, with surfaces that are smooth and free of cracks or irregularities to facilitate navigation. For the entrances, adjustments should be made to reduce excessive door pressure, lower threshold heights to within allowable limits, and ensure sufficient maneuvering clearance for individuals entering the property. Furthermore, installing clear and adequate accessible signage at all entrances, including secondary ones, will aid in the identification of accessible routes, making it easier for individuals with disabilities to navigate the property. Implementing these measures will

significantly improve accessibility and create a more welcoming environment for all visitors.

20. To resolve the barriers in the **interior of the property**, the following improvements can be made: install a pool lift or provide other accessible entry options to ensure compliance with pool accessibility standards, allowing safe access for individuals with limited mobility. Additionally, it is essential to widen hallways and corridors to meet the minimum clearance of 36 inches, enabling better maneuverability and independent movement. Service counters should be adjusted to comply with accessibility standards by lowering their height to the maximum ADA-compliant height of 36 inches, facilitating equal access to services for all individuals. In the dining area, tables must be replaced or modified to meet the required accessible height, and pathways to seating areas should be kept clear to ensure unobstructed access. Lastly, an adequate number of accessible guest rooms should be provided, with furniture arranged to allow sufficient clearance for individuals with mobility needs. Implementing these measures will significantly improve the overall accessibility of the property and create a more inclusive environment for all visitors.

21. To resolve the barriers in the **property restrooms**, the following improvements can be made: ensure that toilet clearance meets the required standards by adjusting the layout to provide adequate maneuvering space around the toilet, which may involve relocating nearby fixtures and modifying the restroom design. Additionally, install grab bars in compliance with ADA specifications, ensuring they are properly placed between 33 and 36 inches above the floor to provide necessary support for individuals with mobility impairments. This includes both adding missing grab bars and repositioning any

11

incorrectly installed bars to ensure they are functional and safe. Implementing these measures will significantly enhance the accessibility of the restrooms, allowing individuals with disabilities to use the facilities safely and independently.

22. The elimination of these barriers by complying with the ADA accessible design standards will allow Mr. Colombani to visit Villa Cofresí Hotel & Restaurant, located at Rd 115 Km 12.0, Rincón, autonomously, safely, and with dignity, on equal terms with any other person.

23. Mr. Colombani feels discouraged from visiting the Villa Cofresí Hotel & Restaurant in Rincón; however, he will return once the architectural barriers have been removed. Only when all barriers related to his disability are eliminated can he return and have full, equal, dignified, and safe access.

24. Mr. Colombani reserves the right to return to the property at any time for any lawful purpose, even if it means subjecting himself to discriminatory conditions, experiencing inconveniences that non-disabled individuals do not face, or risking his personal safety and physical integrity. Just as a non-disabled person may choose to endure hostile conditions that are not illegal, such as a long and interminable checkout line, Mr. Colombani will subject himself to the unlawful discriminatory conditions created by the defendant, regardless of his dignity or the potential risk to his physical integrity.

25. Due to the current lack of information regarding the construction and alteration history of the property, it is alleged that: the property was constructed and/or altered after March 15, 2012; alternatively, the property was constructed or altered after January 26, 1993; alternatively, the property was constructed prior to January 26, 1993, but the defendant

has the financial resources to ensure that the property complies with the most current building codes.

### III.   LEGAL REMEDIES REQUESTED

WHEREFORE, the plaintiff very respectfully requests the following legal remedies:

a. Regarding the Defendant, mentioned in this complaint, a permanent injunction in favor of Mr. Colombani in accordance with 42 USC §12188 (a)(2) and 28 CFR §36.504 (a) ordering the defendant to eliminate the architectural barriers that exist in the exterior, interior, and restrooms of the property by complying with the applicable accessible design guidelines according to their date of construction and alteration. If the property existed on January 26, 1993, it must be altered to comply with the most recent accessible design guidelines promulgated under the ADA to the maximum extent economically feasible for the defendant, either immediately or through a long-term transition plan toward full compliance. If the creation of a transition plan toward compliance is not economically feasible, or if the necessary changes are not structurally possible, it is requested to order that access to goods and services be made available through alternate methods in accordance with 42 U.S.C.§ 12182(b)(2)(A)(v).

b. A permanent statutory injunction pursuant to 42 USC § 12188(a)(2) and 28 CFR § 36.504(a) ordering the defendant to eliminate the existing discriminatory policies and practices that currently prevent the removal of architectural barriers and/or policies and practices that hinder the provision of reasonable accommodations necessary for equal treatment of Mr. Colombani in the Villa Cofresí Hotel & Restaurant.

c. In case the defendant continues its discriminatory practices, it is requested that, pursuant to 42 USC §12188 (a)(2) and 28 CFR §36.504, the properties be ordered closed as a

precautionary measure to stop the discriminatory condition until it has been irrefutably certified to the satisfaction of the court that the discrimination has been eliminated;

d. Nominal damages for one dollar.

e. Attorney's fees, costs, and litigation expenses.

f. The provision of any other remedy that is fair and appropriate, in law or equity, and that has not been expressly requested but is appropriate as a matter of law.

**RESPECTFULLY SUBMITTED**.

**Dated**: November 11, 2024.

> **VELEZ LAW GROUP LLC**
> Civil Rights Division
>
> s/José Carlos Vélez Colón
> José Carlos Vélez Colón
> USDC-PR 231014
>
> RR 18 BOX 1390 #311
> San Juan, PR 00926-9821
>
> E:   vlg@velezlawgroup.com
> T:   (787)-422-1881
>
> **PLAINTIFF'S ATTORNEY**